E-FILED
Tuesday, 13 November 2007  4:36 PM
Clerk, U.S. District Court, ILCD
NOV 1 3 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MARK A. Winger )
Plaintiff )
)
)
VS. ) Case No. 06-cv-1226
)
)
Guy D. Pierce, et al., ) Honorable Harold A. Baker
Defendants ) Judge Presiding

BRIEF INFORMING THE COURT AS TO
GROUNDS PLAINTIFF IS APPEALING

NOW COMES, Mark A. Winger, Plaintiff, pro se,
pursuant to an Order entered on 11-1-07
by the Honorable Judge Harold A. Baker in
the above captioned case and hereby submits
to this District Court a copy of plaintiff's
draft "Brief on Appeal to the 7th Circuit
Court of appeals" ergo, BRIEF FOR THE
PLAINTIFF - APPELLANT in order to comply
with the District Court's Order requiring
the plaintiff to provide a brief informing
the court of plaintiff's grounds on appeal.
Plaintiff anticipates that the

Court will accept the attached brief in consideration of plaintiff's motion to proceed in forma pauperis on appeal.

Plaintiff submits the attached Brief as compliance to the Court's order.

WHEREFORE, Plaintiff prays that this Honorable Court will find upon review of the attached brief that the plaintiff has demonstrated a good faith basis for an appeal.

Respectfully submitted,

Mark A. Winger
Reg# K97110
Box # 2000
200 E. Supermax Rd.
Tamms, IL 62988

No. 07-3021

IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

---

Mark A. Winger

Plaintiff - Appellant

V.

Guy D. PIERCE, Edward JONES, Wesley G. WILES, et al.,

Defendants - Appellees

---

On Appeal of Civil Complaint to the United States District Court, Central District of Illinois, 100 N.E. Monroe Street.
Case Number 06-CV-1226
Judge Harold A. Baker

## BRIEF FOR THE PLAINTIFF-APPELLANT

MARK A. WINGER
Reg # K97120
Box # 2000
200 E. Supermax Rd.
Tamms, IL 62988

pro se

TABLE OF CONTENTS

|  | Page |
|---|---|
| Table of Contents | i |
| Table of Authorities / Cases | ii |
| Jurisdictional Statement | v |
| Issues Presented for Review | vi |
| Statement of the Case | 1 |
| Statement of Facts | 2 |
| Summary of Arguments | 7 |
| Arguments | |
| Argument I | 12 |
| Argument II | 20 |
| Argument III | 28 |
| Argument IV | 30 |
| Relief Sought | 35 |
| Certificate of compliance | 37 |
| Certificate of Service | 38 |
| Appendix | A1-A54 |

i

TABLE OF AUTHORITIES / CASES          Page(s)

Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995)          27

Antonelli V. Sheehan, 81 F.3d 1422, 1432 (7th Cir. 1996)          14, 15

Black v. Lane, 22 F.3d 1395, 1401 (7th Cir. 1994)          23

Cain V. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)          23

Cody v. Weber, et. al., 256 F.3d 764          25

Crawford-El v. Britton, 523 U.S. 574 (1988)          24

Davenport V. De Robertis, 844 F.2d 1310 (7th Cir. 1988)          14, 26

Delaney V. DeTella, 256 F.3d 679 (7th Cir. 2001)          14, 15, 18, 26

De Tamaso v. McGinnis, 970 F.2d 211, 214 (7th Cir. 1992)          23

Estelle V. Gamble, 429 U.S. 97, 97 S. Ct. 285

Farmer V. Brennan, 511 U.S. 825, 114 S.Ct 1970          27

Foman V. Davis, 371 U.S. 178, 82-83, 83 S. Ct 227 (1962)          28

Page (s)

Hafner v. Brown, 983 F.2d 570, 37 Fed.R.Evid. Serv. 935    20

Haines v. Kerner, 404 U.s. 519 (1972)                        12

Hampton v. Hanrahan, 600 F.2d 600, 620-21 (7th Cir. 1979)    20

Housley v. Dodson, 41 F.3d 579 (10th Cir. 1994)          18

Howland v. Kilquist, 833 F.2d 639, 646 (7th Cir. 1987)       32, 34

Kentucky Department of Corrections v. Thompson, 490
   U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506           22

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000)           14, 27, 28, 29

Maclin v. Freake, 650 F.2d 885, 886-89 (7th Cir. 1981)       34

Maxwell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990)      25

Merritt v. Faulkner, 697 F.2d 761, 765 (7th Cir. 1983)       34

Pearson v. Ramos, 237 F.3d 881 (7th Cir. 2001)          13, 19, 33

Perkins v. Kansas Department of Corrections,
   165 F.3d 803, (10th Cir. 1999).                      18

iii

Page (s)

Pride V. Peters, 1995 WL 746190 at 1 (7th Cir. 1995)   23

Shane V. Fauver, 213 F. 3d 113, 46 Fed. R. Serv. 3d 957   28
    (3rd Cir. 2000).

Thompson V. Ramos, 130 F. 3d 754, 762-64 (7th Cir. 1997)

Verser V. Elyea, 113 F. Supp. 2d 1211 (N.D. Ill. 2000)   23

Watts V. Ramos, 948 F. Supp. 739 (N.D. Ill. 1996)   14

Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321,
    115 L. Ed. 2d 271 (1991)   26, 27

Zarnes V. Rhodes, 64 F. 3d 285, 288 (7th Cir. 1995)   31

20   Illinois Administrative Code   A19-23

# JURISDICTION

On October 24th, 2006 the U.S. District Court of Central Illinois dismissed Plaintiff's complaint brought under 42 U.S.C. § 1983 for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and Fed.R.Civ.Pro. 12(b)(6). (A41-43).

On November 3rd, 2006 Plaintiff filed a Motion to Amend the Complaint and a Motion to Alter Judgement. The District Court denied Plaintiff's Motion to Amend the Complaint and his Motion to Alter Judgement on August 1st, 2007. (A-31-40; A-44).

On August 24th, 2007 Plaintiff filed a Notice of Appeal pursuant to Fed.R.App.P. 4(a) and a motion to Proceed in Forma Pauperis with supporting affidavit pursuant to Fed.Rule.App.P. 24 (a)(3). (A45-54).

V.

## ISSUES TO BE PRESENTED FOR REVIEW

1. If the District Court improperly applied the findings held by the Seventh Circuit Court of Appeals in "Pearson v. Ramos" to erroneously dismiss the complaint for failure to state a claim upon which relief may be granted.

2. If the District Court erred in concluding that plaintiff's only federal claim was the 365 day denial of exercise away from his cell.

3. If the District Court erred in dismissing the pro se complaint under federal Rule 12 (b)(6) without giving plaintiff an opportunity to amend/correct the complaint, and where fact issues exist.

4. If the District Court abused its discretion by denying Plaintiff's Motion Requesting Appointment of Counsel.

vi.

## STATEMENT OF CASE

Plaintiff brought civil action under 42 U.S.C. §1983 against the defendants. District Court had jurisdiction pursuant to 42. U.S.C. § 1331(a) and § 1343. A merit review hearing was held on September 19th, 2006. District Court granted Plaintiff's Motion to Proceed in Forma Pauperis on September 28th, 2006. District Court dismissed case on October 24th, 2006 for failure to state a claim upon which relief could be granted, pursuant to 28 U.S.C. §1915A(b) and Fed. R. Civ. Pro. Rule 12(b)(6) and denied Plaintiff's Motion for Appointment of Counsel. Plaintiff filed a motion to Amend the Complaint and a motion to Alter Judgement pursuant to Fed. R. Civ. P. 59(e) on November 3rd, 2006. District Court denied Plaintiff's motion to Alter Judgement and his motion to Amend/Correct Complaint on August 1st, 2007. The Plaintiff now appeals from the final judgement pursuant to Fed. R. App. P. 4(a).

## STATEMENT OF FACTS

In July, 2005 Plaintiff-Appellant was issued a ticket while at the Pontiac Correctional Center charging multiple infractions of Department Rules stemming from the same incident. The Adjustment Committee believed the plaintiff to be guilty of the charges alleged on the ticket and recommended that the plaintiff be punished by a loss of all privileges for one year; loss of good time; segregation for one year; C-grade for one year; loss of contact visits for one year; and, a year of yard restriction. The Warden approved the Adjustment Committee's recommendations which put into affect a 365-day total denial of out-of-cell exercise.

The Plaintiff-Appellant filed a grievance claiming that the 365-day total denial of out-of-cell exercise violated Department Rules and Plaintiff's Eighth Amendment Right against cruel and unusual punishment.

After approximately six months of total yard denial the plaintiff began to complain to staff of suffering from what he believed were panic attacks. After voicing his complaints repeatedly it was eventually arrange after about

2.

nine months of complete yard denial, for the plaintiff to have approximately one hour of exercise away from his cell in an outside cage. The next opportunity for exercise away from his cell was not provided until more than three months later after plaintiff was unexpectedly transferred to Tamms Correctional Facility.

The plaintiff appealed his grievance to the Administrative Review Board (ARB) in Springfield, Illinois. In a video conference it was brought to the attention of the ARB that the plaintiff was suffering psychological injury from his long term yard restriction and that the decision making officials at the Pontiac Correctional Center were being deliberately indifferent to the plaintiff's serious medical needs.

Plaintiff has since been diagnosed as suffering panic attacks and is being medically treated for his injury.

The ticket was the plaintiff's first and only ticket received while incarcerated. And, though the charges on the ticket which all stemmed from the same incident were major violations

at no time was anyone hurt or injured.
Plaintiff was not at any time considered an
acute security risk and the incident was
non-yard related. The plaintiff is not
deemed violent or incorrigible.

Plaintiff cited Department Rules 504.670 and
504.110 in his grievance which stipulate that
the maximum yard restriction for a first
offense shall not exceed 90 days; And, that
any ticket charging multiple violations stemming
from the same incident shall not exceed the
maximum penalty for the most serious offense
charged. In this case, the officials were
limited to a yard restriction not to exceed
90 days.

The plaintiff brought civil action against the
defendants under 42 U.S.C. § 1983 claiming that
the defendants conspired to affix a
prohibited punishment of 365 days restriction
of out-of-cell exercise which he claims is
a violation of his Eighth Amendment Right
against Cruel and Unusual Punishment. Plaintiff
further alleged that the defendants acted with
deliberate indifference to his serious
medical needs. And, that upon learning that

4

the plaintiff was preparing to file a civil
action, some of the defendants retaliated
by transferring the plaintiff to Tamms
Maximum Security Facility and losing his
legal materials to prevent plaintiff from
filing this complaint.

Plaintiff also filed a motion requesting
appointment of counsel; citing in his
amended complaint that his debilitating
panic attacks would interfere with his ability
to perform in front of a jury. And, because
plaintiff has alleged conspiracy and retaliation,
the plaintiff believes that the truth is more
likely than not to be revealed only if both
sides are represented by counsel. Furthermore,
the case will probably require the testimony
of an expert in the area of panic or anxiety
disorders.

A merit review hearing was held on
September 19th, 2006 pursuant to 28 U.S.C.
§ 1915A, and the court granted plaintiff's
motion to proceed in Forma Pauperis on
September 28th, 2006 pursuant to 28 U.S.C.
§ 1915 (b)(1).

On October 24, 2006 the District Court

5.

entered an order denying plaintiff's request
for appointment of counsel and also dismissed
plaintiff's entire case pursuant to 28 U.S.C.
§ 1915 A (b) and Fed. R. Civ. Pro. Rule 12(b)(6)
for failure to state a claim upon which
relief may be granted.

The court stated that the only
federal claim raised by the plaintiff
was a 365 day yard restriction.
However, the court did not address
plaintiff's claims of deliberate
indifference to his serious medical
needs; conspiracy; or, retaliation.

The District Court held that one year
of segregation without access to yard
does not violate the Eighth Amendment;
citing Pearson V. Ramos (7th Cir. 2001).

On November 3rd, 2006 plaintiff filed
a motion to amend the original complaint
to correct deficiencies and plaintiff also
filed a motion to Alter Judgement pursuant
to Rule 59 (e) to clarify facts. This
action was still in the screening phase.

On August 1st, 2007 the District Court denied plaintiff's motion to Amend the complaint and denied the motion to Alter Judgement without giving any explenation, Circuit Rule 50.

This was the final judgement in the District Court and plaintiff filed his notice of Appeal and motion to proceed on appeal in Forma Pauperis pursuant to Fed. R. App. P. 4 and Fed. R. App. P. 24 (a)(3) on August 24th, 2007.

## SUMMARY OF ARGUMENTS

## ARGUMENT ONE

The District court improperly applied the law established by the Seventh Circuit Court of Appeals in "Pearson v. Ramos" and thus erroneously dismissed this complaint by concluding that a one year denial of exercise away from one's cell while in segregation, blanketly, is not unconstitutional.

7.

In fact, the Court of Appeals gave a
contrary opinion by giving guidance that
after 90 days the right to exercise
away from the cell accrues. The Court
of Appeals claimed not to purport to
overrule the litany of their earlier
decisions holding that long term denial of
exercise may state a claim under the
Eighth Amendent.

    Furthermore, the dispositive issue in
"Pearson V. Ramos" was the constitutionality
of "stacking" of successive 90-day yard
restrictions resulting from subsequent violations
to Department Rules, whose unfortunate
affect could add up to a years' yard
restriction.

    However, in the case under review
"stacking" is not an issue. And, although
the Appellant's single ticket charges
multiple infractions stemming from the
same incident, Department Rules limit
the punishment one may receive under
"multiple violations" to not exceed the
maximum penalty for the most serious

page 8

infraction. In this case a maximum of 90 days yard restriction was the greatest permissible punishment.

## Argument Two

The District Court's conclusion that the only federal claim raised by the plaintiff was the 365-day yard denial was erroneous and overlooked appellant's other claims found in his complaint and amended complaint. Specifically, that the defendant's were deliberately indifferent to plaintiff's repeated complaints of psychological injury. Additionally, the court overlooked the claim of retaliation by the defendants against the plaintiff upon their learning of appellant's intent to file a civil rights action against them. And, while the District Court even stated that the plaintiff alleged that the defendants "conspired" to affix a prohibited punishment against him, the court failed to recognize that conspiracy is

Cognizable under the Eighth Amendment.

## ARGUMENT THREE

It was an abuse of discretion of the District Court to deny plaintiff's Motion to Amend his Complaint after the merit review hearing, where questions of fact exist and where the Amended Complaint would have cured any deficiencies found in the original pro se complaint. An amendment at the screening phase should be allowed if it will cure the problem. Furthermore, it was an abuse of discretion to deny this and the plaintiff's motion to alter judgement without any explenation.

## ARGUMENT FOUR

The District Court abused its discretion by denying plaintiff's request for the appointment of counsel. The plaintiff demanded a trial by jury of a case that will likely require expert testimony.

Furthermore, the plaintiff's amended complaint cured any deficiency of his original complaint by pointing out to the court that the plaintiff suffers from debilitating panic attacks which he claims are the result of his one-year denial of exercise away from his cell. Thereby, making self-representation before a jury to be problematic. Furthermore, the allegations of conspiracy and of retaliation demonstrate more likely than not that the truth will be exposed only if both parties are represented by counsel.

# ARGUMENTS

I.   The District Court improperly applied the findings in "Pearson v. Ramos" to erroneously dismiss the complaint for failure to state a claim upon which relief may be granted.

## Standard of Review

Federal Rules of Civil Procedures 12(b)(6) authorizes dismissal of complaints that state no actionable claim. It is well established that pro se complaints are to be liberally construed, Haines v. Kerner, 404 u.s. 519 (1972). They can be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.", Haines, 404 u.s. at 521.

A. The Court of Appeals in " Pearson v. Ramos"
did not overrule existing law prohibiting long
term denial of exercise away from one's cell.

In Pearson v. Ramos, 237 F.3d 881 (7th Cir.
2001) the court gave specific guidance that after
90 days the right to exercise away from the
cell accrues, stating : "We think it a
reasonable rule that the denial of yard privileges
for no more than 90 days at a stretch is not
cruel and unusual punishment." Concurring,
Judge Ripple said, "Under our existing case
law which the panel does not purport to over-
rule, a total restriction on exercise of
this duration [one year, ibid] would not be
sustainable absent exigent circumstances."

Indeed, the panel upheld its position that
long term denial of exercise away from the
cell may state a claim under the Eighth
Amendment. Furthermore, the court stated that
"One year is not short term." Pearson v. Ramos,
237 F.3d 881 (7th Cir. 2001).

Historically, this court has held that
periods of yard denial shorter than one year
may also state a claim under the Eighth.

page 13

Amendment. In Davenport V. DeRobertis, 844 F.2d 1310, 1315 (7th Cir. 1988) the court gave minimum standards of at least 5 hours per week of out of cell exercise. In Antonelli v. Sheahan, 81 F.3d 1422 (7th Cir. 1996) the court held that an inmate stated a claim under the Eighth Amendent where he alleged being prohibited from recreating for periods up to 7 weeks and at most called once every two weeks for one hour at a time. In Delaney V. DeTella, 256 F.3d 677 (7th Cir. 2001) the court stated that 6 months denial of exercise out of cell stated an Eighth Amendment claim. That court cited Lopez V. Smith, 203 F.3d 1122, 1133 (9th Cir. 2000) which acknowledges that long term denial of out of cell exercise in excess of 6 weeks, no showing of adverse medical affects are required.

In Watts V. Ramos, 948 F.Supp. 739 (N.D. Ill. 1996) the court held that absolute restriction on recreation for one year was "cruel and unusual punishment" noting absence of penological reason to deny recreation time.

page 14

Clearly, the 365 day total restriction of
out of cell exercise authorized by
Warden Guy. D. Pierce (A-1) would be
unconstitutional according to this court
of Appeals' past rulings and in addition
the one hour per month yard time alleged
by the staff at Pontiac Correctional Center to
be available to inmates who are on yard
restriction         fall below the levels
seen in Antonelli v. Sheahan, 81 F.3d 1422,
1432 (7th Cir. 1996).

This court also held after "Pearson
v. Ramos" in Delaney v. DeTella, 256
F.3d 677 (7th Cir. 2001) that "officials
could not have reasonably believed that
complete withholding of out of cell
exercise from inmate for 6 months did
not violate Eighth Amendment."

B.   The case under review is distinguished
from "Pearson v. Ramos" in every respect cited
by the reviewing court.

In Pearson v. Ramos, 237 F.3d 881,
(7th Cir. 2001) the plaintiff had committed (4)

page 15

four separate serious infractions of
Department Rules each of which carried a
90 day yard restriction, and he was
punished with a 90 day yard restriction
for each subsequent occurance.

All four infractions occurred when the
plaintiff was out of his cell over a period
of 6 months. The plaintiff was marked
as violent and incorrigible. And, his actions
caused serious harm to others in each
instance.

The panel considered "whether the
denial of yard privileges for a year
does so much harm to a prisoner that
it is intolerable to the sensibilities
of a civilized society, *no matter what
the circumstances*" (emphasis added) and
held the answer is "no." And, "To
confine in 'solitary' a prisoner who
acts like a beast whenever he is let out
of his cell is the least cruel measure
that occurs to us for dealing with such a
person."

In the present case under review
"stacking" is not an issue. Here,

page 16

the plaintiff-appellant was issued a single
ticket charging multiple violations of
Department Rules stemming from the
same incident (A-2,3) The ticket
was, and continues to be the plaintiff's
only ticket. No one was hurt or
injured and the charges were non-yard
related (A-1). The plaintiff has
not been marked as violent and incorrigible
and he does not pose an acute
security risk.

C. Officials were aware of the objectively
unconstitutional punishment.

It is irrefutable that the plaintiff alerted
prison officials of the rules regarding the
excessive punishment even before the 90-
day threshhold had been breached. (44-49.
Furthermore, plaintiff repeatedly alerted
prison officials directly and through the
grievance process of his psychological
injury and the prison official's deliberate
indifference to his serious medical need.
(A-5→ A-18)

Prison officials could not have reasonably believed that the complete withholding of out-of-cell exercise for 365 days did not violate the Eighth Amendment, see Delaney V. DeTella, 256 F.3d 679 (7th Cir. 2001).

Other courts have likewise held that denial of outdoor recreation for 9 months is unconstitutional, Perkins V. Kansas Department of Corrections, 165 F.3d (10th Cir. 1999). And, in Housley v. Dodson held "There can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment." Housley v. Dodson, 41 F.3d 579 (10th Cir. 1994).

The most telling fact that the District Court misinterpreted this Court's decision in Pearson V. Ramos is the reference that the panel in Delaney V. DeTella made to their decision in Pearson v. Ramos, saying "We recently noted that segregation is akin to solitary confinement and that such confinement, uninterrupted by

opportunities for out of cell exercise
'could reasonably be described as cruel
and by reference to the current norms
of American prisons, unusual.', Pearson
v. Ramos, 237 F.3d 881, 884 (7th Cir. 2001). "

## CONCLUSION

The District Court abused its discretion to
dismiss plaintiff's complaint for failure to
state a claim upon which relief may be
granted when it erroneously generalized the
findings in Pearson v. Ramos, concluding
that a year of yard restriction while in
segregation is not unconstitutional despite
the fact that plaintiff's circumstances
are completely different than the unique
circumstances considered in Pearson v.
Ramos; and, that the Department Rules
preclude such an objectively unconstitutional
punishment in general and under the plaintiff's
circumstances.

II. The District Court erred in concluding that Plaintiff's only federal claim was the denial of yard for 365 days while in segregation, and ignored plaintiff's other federal claims raised in his complaint.

## STANDARD OF REVIEW

Conspiracy claims may be brought under 42 U.S.C. § 1983, Hafner v. Brown, F. 2d 570, 577-78 (4th Cir. 1992). "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act or a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict the harm or injury upon another and an overt act that results in damages.", Hampton v. Hanrahan, 600 F. 2d, 620 -21, (7th Cir. 1979).

page 20

A. Rules governing prison officials decision-making process prohibit a one year total denial of exercise away from the cell.

20 Illinois Administrative Code, Section 504.110 titled, "Computation of Discipline for Multiple Offenses" specifies that: "When an offender has been found guilty of multiple offenses arising from a single incident the maximum penalty shall not exceed the maximum penalty for the most serious offense the individual is found to have committed. (A-19). Tabele-A of Section 504 (A-20-22) lists the penalties for the enumerated violations of Department Rules. The table does not include yard restriction, which is a constitutional right as opposed to a institutional privilege.

20 Illinois Administrative Code, Section 504.670 addresses yard restriction criteria available to prison officials (A-23). The criteria limits the maximum penalty to 90 days yard restriction for first time offenses and additional 90 day

page 21

penalties for subsequent offenses.

B.    Prison officials conspired to affix
a punishment prohibited by 20 Illinois
Administrative Code, Section 504.110 and
504.670 and the Eighth Amendment of the
U.S. Constitution.

Department Rules 504.110 and 504.670
establish substantive predicates to govern
official decision-making by mandating an
outcome be reached upon a finding
that the relevant criteria have been met.
Thereby, creating a liberty interest.
The U.S. Supreme Court in, Kentucky
Department of Corrections v. Thompson,
490 U.S. 454, 109 S. Ct. 1904 held that,
" The relevant language was sufficiently
mandatory to create a liberty interest. "
(A19; A23).

The signatures of the defendants on
the summary reports and the yard
recreation restriction sheet ( A-1; A24-27)
establishes that the defendants conspired
to affix the 365 day out-of-cell exercise

page 22

restriction against plaintiff's liberty
interest and in contravention to the
Department's own criteria, which they
were aware. And, their signatures
bear liability, see Verser v. Elyea,
113 F. Supp. 2d 1211 (N.D. Ill. 2000);
Pride v. Peters, 1995 WL746190 at 1 (7th
Cir. 1995); Black v. Lane, 22 F.3d 1395,
1401 (7th Cir. 1994).

## STANDARD OF REVIEW

Prison officials may not retaliate against
inmates who seek to exercise their
Constitutional Right of access to the
courts. DeTomaso v. McGinnis, 970 F.2d 211,
214, (7th Cir. 1992). To state a claim for
retaliation, the inmate must allege chronology
of events which retaliation may plausibly be
inferred. Cain v. Lane, 857 F.2d 1139, 1143
n.6 (7th Cir. 1988).

C.   Defendants transferred plaintiff and lost
his legal materials in retaliation upon
learning of plaintiff's intent to file a

complaint against the defendants pursuant to 42 U.S.C. § 1983.

Plaintiff stated in his verified complaint and amended complaint a chronology of events which would support the plausible inference that he was transferred in retaliation to his stated intent to file a civil rights claim under 42 U.S.C. § 1983 against the defendants.

While plaintiff claims to have other evidence to support his claim of retaliation beyond the mere inference drawn by the chronology of events, a plaintiff is not required to show "clear and convincing evidence" to show the motivation for a prison official to retaliate against him. Crawford-El v. Britton, 523 U.S. 574 (1988).

Plaintiff served his entire year of the assigned segregation without incident and some of his privileges had been restored by the Warden based on plaintiff's behavior and disciplinary history or lack of history. But, after senior officials were alerted to plaintiff's intent to file a complaint under Section 1983,

the plaintiff was immediately and unexpectedly transferred to Tamms Supermax prison under Administrative Detention Status and his legal materials were promptly lost. The transferring facility cited plaintiff's behavior and disciplinary history as the basis for his transfer.

"Conduct that retaliates against the exercise of a constitutionally protected right is actionable even if the conduct would have been proper if motivated by a different reason." Maxwell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990). "The violation lies in the intent to impede access to the courts." See also, Cody v. Weber, et al, 256 F.3d 764.

## STANDARD OF REVIEW

"An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.",

Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 115 L.Ed. 2d 271 (1991). "There is a strong likelihood of physical injury when segregated prisoners are denied all access to exercise for more than 90 days." Delaney v. DeTella, 256 F.3d 679, (7th Cir. 2001)., Davenport V. DeRobertis, 844 F. 2d 1310, 1313 (7th Cir. 1988).

D.    The defendants acted with deliberate indifference when they failed to act despite their knowledge of substantial risk or serious harm to the plaintiff.

Evidence provided in plaintiff's verified complaint show that he was denied out-of-cell exercise for 9 months and an additional 3 months after being given only 1 hour and 15 minutes of yard time. (A-28-30). Plaintiff demonstrated that officials were aware of the rules governing exercise restriction as well as plaintiff's complaining of their deliberate

indifference to his serious medical needs.

Evidence provided in plaintiff's § 1983 complaint satisfied both the objective prong and subjective prong of the deliberate indifference test. See Lopez V. Smith, 203 F.3d 1122, 1133 f.15 (9th Cir. 2000); Farmer V. Brennan, 511 U.S. 825 ; Wilson V. Seiter, 501 U.S. 294, 111 S. Ct. 2321 (1991); Allen V. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995).

## CONCLUSION

Plaintiff raised federal claims of retaliation; conspiracy; and, deliberate indifference , which the District Court failed to consider.

III. The District Court Abused
its Discretion by dismissing the
complaint under Federal Rule 12(6)(b)
without giving plaintiff an
opportunity to Amend/correct the
complaint and denying the Motion to
Alter Judgement without explanation.

## STANDARD OF REVIEW

" If an amendment at the screening
phase would cure the problem it
should be allowed." Shane V. Fauver,
213 F. 3d 113, (3rd Cir. 2000). " A trial
court shall give leave to amend freely
'when justice so requires." The
Supreme Court has stated that 'This
mandate is to be heeded.' Foman
V. Davis, 371 U.S. 178, 182-83, S. Ct.
277, 9 L.Ed. 2d (1962)" Lopez V. Smith,
203 F. 2d 1122.

The plaintiff filed a motion to Alter
Judgement (A-31-36) and an amended

complaint (A-37-40). The amended
complaint added the retaliation claim
(A-39)        and was clarified in
the Motion to Alter Judgement. (A-34   ).
   Furthermore, the amended complaint
provided additional information to
support and correct the deficiency of
plaintiff's request for appointment of
counsel. Specifically, the plaintiff is
being medically treated for panic attacks
caused by his long term denial of
exercise. These factors were likewise
clarified in the Motion to Alter Judgement.
   Additionally, the Motion to Alter
Judgement clarified distinguishing aspects
between Pearson V. Ramos (relied on by the
District Court) and the plaintiff's case.
   The District court abused its
discretion when it dismissed the amended
complaint where issues of fact existed.
Lopez V. Smith, 203 F.3d 1122. Furthermore,
the court abused its discretion to
dismiss plaintiff's request to amend
the complaint and the Motion to

Alter Judgement without providing any explenation. Circuit Court Rule 50. Where, judges must give reason when entering an appealable order.

## CONCLUSION

The Court abused its discretion when it denied plaintiff an opportunity to amend his complaint and by dismissing amended complaint and motion to Alter Judgement without any explenation.

IV. IT was an abuse of discretion to dismiss plaintiff's motion for an appointment of an attorney.

### STANDARD OF REVIEW

A civil litigant has no constitutional or statutory right to counsel, but the court may "request counsel to represent indigents in appropriate

page 30

cases." Zarnes V. Rhodes, 64
F.3d 285, 288 (7th Cir. 1995); cf.28
U.S.C. § 1915 (d). Review of the
District Court's decision not to
appoint counsel is reviewed for
abuse of discretion. Zarnes, 64
F.3d at 288.

4.  The District Court did not consider
factors that would demonstrate that
denying appointment of counsel would
result in fundamental unfairness
infringing on Due Process rights.

The Court denied plaintiff's request
for appointment of counsel after
concluding that, a) the issues raised
in the complaint were not so complex
as to require an attorney; b) the
plaintiff appears capable of representing
himself; and, c) the plaintiff has no
physical or mental disability that
might preclude him from adequately
investigating facts.   This is not
correct.

Five factors must be considered when ruling on a § 1915 (d) Motion of Appointment of Counsel. They are:

1. Merits of Claim
2. Ability of Plaintiff to investigate crucial facts.
3. Whether the nature of the case indicates that the truth will more likely be exposed where both sides are represented by counsel.
4. Capability of indigent to present the case.
5. Complexity of legal issues of the case.

" Failure to consider the five factors when ruling on a § 1915 (d) Motion of Appointment of counsel will be treated as a clear abuse of discretion." See Howland v. Kilquist, 833 F.2d 639, 646 (7th Cir. 1987).

The plaintiff demanded a jury trial. He has alleged to suffer from debilitating panic attacks (A-35) which would be problematic for self-representation in

page 32.

front of a jury. Furthermore, plaintiff
may require expert testimony on panic
attacks since plaintiff does not qualify
to testify as an expert. See Pearson
V. Ramos, 237 F.3d 881 (7th Cir. 2001);
Fed. R. Evid. 702. These facts were
brought forth in plaintiff's amended
complaint and Motion to Alter Judgement.

Plaintiff raised claims of conspiracy
and retaliation, which by their nature
would suggest that the truth will more
likely be exposed if both sides are
represented by counsel.

Plaintiff's transfer to Tamms Supermax
prison places an enormous burden on
plaintiff's ability to investigate crucial
facts, where plaintiff is not permitted to
initiate any phone calls and is limited to
incoming scheduled legal calls. Furthermore,
all of plaintiff's mail is monitored including
often times his "legal mail."

Furthermore, plaintiff's claims have merit;
see Arguments I, II, and III of this appeal.

## CONCLUSION

Plaintiff's psychological injury in addition to his placement at Tamms supermax may preclude him from being able to adequately investigate the facts of this case and presenting his case before a jury. Plaintiff's claims of conspiracy and retaliation indicate that the truth is more likely to be revealed if both sides are represented by counsel. The District court abused its discretion by denying plaintiff's request for appointment of counsel. See Merritt v. Faulkner, 697 F.2d 761, 765 (7th Cir. 1983); Maclin v. Freake, 650 F.2d 885, 886-89 (7th Cir. 1981); Howland v. Kilquist, 833 F.2d 639, 646 (7th Cir. 1987).

page 34

# RELIEF REQUESTED

Plaintiff requests that this Honorable Court of Review find that:

1. Plaintiff did state federal claims under which relief may be granted, which include:

    a) Eighth Amendment violation against cruel and unusual punishment, where a 365 day denial of exercise is unconstitutional in plaintiff's case.

    b) Plaintiff's claim of retaliation is a federally actionable claim.

    c) Plaintiff's claim of conspiracy to affix a prohibited punishment is a federally actionable claim.

    d) Plaintiff stated a federal claim of deliberate indifference to his serious medical needs by prison officials.

2. The 7th Circuit Court of Appeals' ruling in Pearson v. Ramos, 237 F. 3d 881 (7th Cir. 2001) did not hold that a

one year denial of exercise while in segregation is not unconstitutional in all circumstance ; and only ruled on cases involving "stacking" and violent incorrigible inmates who pose an acute security risk.

3.   The District Court abused its discretion by denying plaintiff's motion to Amend his complaint and by also denying his motion to Alter Judgement without explenation.

4.   The District Court abused its discretion by denying plaintiff's request for appointment of counsel.

5.   The District Court shall rescind the strike against the plaintiff.

CERTIFICATE OF COMPLIANCE

The Brief is in compliance
with the length requirements of
Fed. R. App. P. 32 (a)(7)(B), type-
volume limitation and does not
exceed 14,000 words. The 36 page
handwritten brief is estimated to
contain less than 6,000 words and
less than 800 lines.

State of Illinois
Department of Corrections

RECREATION RESTRICTION

Winger, Mark _____ K91120 _____ Pontiac CC
(Inmate Name)          (Inmate Number)        (Facility)

The above inmate's recreation opportunities are restricted as follows:

☑ Recreation Restriction for _365_ days.  If not total restriction, specify

amount of recreation to be received: _____ and/or

☐ Limited Recreation for _____ days.  Specify amount of recreation inmate shall

receive: _____

The restriction is imposed due to:

☑ Disciplinary violation(s) of _____7-11-05_____ for
                                       (Dates)

_208, 501, 206, 601, 100_____ which are/are not yard related.
        (Infractions)                    (Circle one)

☐ Investigation of inmate.

☐ Medical or mental health of inmate.  Reasons: _____

_____

Signature of Health Care Professional: _____

☐ Inmate's protection, including informants and witnesses in criminal cases.

☐ High escape risk.

_____            _8/1/6__
(Warden or Designee)                  (Date)

Distribution:  1) Chief of Security; 2) Inmate Master File; 3) Inmate.

DCA 7070 (Eff. 3/89)
IL 426-13303

A - 1

State of Illinois—Department of Corrections
**DISCIPLINARY REPORT**

Page 1 of 2

☒ Disciplinary Report  07/11/2005 _____  ☐ Investigative Report _____
        Date                                          Date

Committed Person: Winger, Mark A.    No. K97120    Facility: Pontiac

Observation Date: 07/11/2005    Time: 80:0    ☒ am ☐ pm   Location: Intel

C/O Edward Vilt #3439                    ⁵⁄₀  7V.H 3439        07/11/05  80:0  ☒ am ☐ pm
PRINT Employee's Name       Employee's Signature       Date    Time

Offense: 504 ☒A  601-100: Solicitation of Violent Assault of Any Person
☐B 206: Intimidation or Threats, 208: Dangerous Communication
☐C 501: Violating State or Federal Laws

Observation: This Disciplinary Report is the result of a joint investigation conducted by the Intel unit of the Pontiac Correctional Center, other IDOC Agents, and Outside Law Enforcement agencies. Through the collection of Physical Evidence and information provided by registered Confidential Informant # CIU-05-067-PON, the conclusion of this investigation is that Offender Mark A. Winger K97120 violated Departmental Rules relevant to 601-100, Solicitation of Violent Assault of any person, 206 - Intimidation or Threats, 208 - Dangerous Communication, and 501 - Violation of State or Federal Laws, namely 720 ILCS 5/8-1.1 Solicitation of Murder, 720 ILCS 5/10-2 Aggravated Kidnapping for Ransom.

Witnesses, if any:

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☐ Temporary Confinement    ☐ Investigative Status
Reasons:

_____        _____    ____
PRINT Name                   Shift Supervisor's Signature   Date
                             (For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer   Comments: _____

_____        _____    ____
PRINT Name                   Signature                    Date

☐ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit

_____        _____    ____
PRINT Name                   Reviewing Officer's Signature  Date

☐ Reviewed by Hearing Investigator: _____
(Adult Division Major Reports Only)  PRINT Name      Signature      Date

PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

                                                Committed Person Refused to Sign ☐
_____        _____
Committed Person's Signature    Number

                                                            ☐ am ☐ pm
_____    _____    ____  _____
PRINT Serving Employee's Name  Serving Employee's Signature  Date  Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offense Date: _____
                            _____        _____
                            Committed Person's Signature       Number

(DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING)

I would like the Adjustment Committee or Program Unit to consider calling the following witnesses regarding disciplinary report of _____.
                                                                        Date

NAME OF WITNESS: _____    Number/Cell/Title: _____

Witness can testify to: _____

NAME OF WITNESS: _____    Number/Cell/Title: _____

Witness can testify to: _____

                            _____        _____
                            Committed Person's Name            Number

DC 7205 (Rev. 5/00)  Distribution: 1) Master File; 2) Committed Person
IL 426—361                        3) Facility;  4) Facility

A-2

☒ Disciplinary Report ☐ Investigative Report

Committed Person: Winger, Mark A. _____ No. K97120 _____ Facility: Pontiac _____

Observation Date: 07/11/2005 _____ Time: 08:00 ☒ am ☐ pm Location: Intel _____

During the course of this investigation evidence was collected to substantiate the fact that Winger solicited an individual, whose identity will remain confidential, to arrange for the kidnapping and murder of a witness from Winger's original criminal trial. It is also verified through evidence collection that Winger instructed the individual, both in verbal and written communication, on how to proceed with the kidnapping and murder of the witness, as well as information on kidnapping a third party for the purpose of collecting a ransom to fund the kidnapping / murder of the witness. Physical evidence collected corroborates information provided by CI # 05-067-PON that Winger solicited an individual to kidnap the key witness in Winger's original criminal trial for the purpose of forcing the witness to recant information and testimony provided to authorities. Winger's specific instructions included staging the scene of the kidnapping to make it look as though the witness left on their own power, forcing the witness to produce a written as well as an audio recantation of testimony provided, sending the recantation to a family member of Winger's, as well as Winger Attorney, then killing the witness in a manor which would lead authorities to believe that it was a suicide. Evidence collected also substantiates the fact that Winger's purpose for this to take place was to eliminate the witness in anticipation of receiving a new trial, therefore improving Winger's chances of not being found guilty in the second trial. All physical evidence collected during the course of this investigation is in the possession of the Outside Law Enforcement Agencies. It should be noted that the written communication mentioned in the body of this report has been compared to origional hand written documents from Offender Winger and bares many similar characteristics. Specifics of the evidence collected during the course of this investigation are not directly referenced in this Disciplinary Report for the purpose of maintaining the integrity of this investigation, the safety of the Confidential informant, the security of the Institution, as well as any possible prosecution that may be imposed after a total review of all available facts and evidence by the Jurisdictional Prosecuting Authority. Offender Winger has been positively identified by Inmate Identification Card, OTS, Institutional Graphics, and CI# 05-067-PON.

COMMITTED PERSON'S GRIEVANCE

041097

| Date: 8-16-05 | Committed Person: (Please Print) MARK WINGER | ID#: K97120 |
|---|---|---|

Present Facility: Pontiac Correction Ctr.    Facility where grievance issue occurred: Pontiac Correction Ctr.

NATURE OF GRIEVANCE:

☐ Personal Property   ☐ Mail Handling   ☐ Restoration of Good Time   ☐ Disability
☐ Staff Conduct   ☐ Dietary   ☐ Medical Treatment   ☐ Other (specify): _____
☐ Transfer Denial by Facility   ☐ Transfer Denial by Transfer Coordinator

☒ Disciplinary Report: 7 / 11 / 05   Pontiac Correctional Center
　　　　　　　　　　　Date of Report　　　　　Facility where Issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: Summary and Exhibits are attached to this grievance form.

Relief Requested: See Attached Sheets

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Mark Winger_ Committed Person's Signature   K97120 ID#   8 / 16 / 05 Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

Date Received: ___/___/___   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name ___ Counselor's Signature ___ Date of Response ___

**EMERGENCY REVIEW**

Date Received: ___/___/___   Is this determined to be of an emergency nature? ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

Chief Administrative Officer's Signature ___ Date ___

Distribution: Master File: Committed Person   Page 1   A-4

GRIEVANCE

This greivance relates to Disciplinary Report number 200503375/1 - PON, pursuant to greivance procedures established in 20 Illinois Administrative Code, Chapter I, Section 504, subchapter F. Specifically, Section 504.810, (a) and (b).

The aforementioned Disciplinary Report and Final Summary of charges and punishment are procedurally defective as well as substantively defective, for the following reasons:

(1)    20 IL ADMIN CODE, 504. TABLE-A states that for offense 501, "Violating State and Federal Laws", that if the specific offense is stated elsewhere in this part, a committed person may not be charged with this offense.

However, ticket #200503375/1-PON does in fact charge committed person with 501 and ~~601.~~ 601. Solicitation/100, which is in violation of the CODE.

(2)    20 IL ADMIN CODE, 504.60 (e) states that, "... However, if the investigation reveals evidence of a convincing nature that the committed person did not commit the offense, that evidence must be reported to the committee.

At no time was the committee shown evidence to substantiate the accusation that the committed

A - 5

person ever Commanded, Requested, or Encouraged any other person to commit the act of 1st degree murder of a witness or any other person.

Not only does the committed person deny the false accusation, but in fact no such evidence exists.

Therefore, the charge of 604. Solicitation /100 is unsubstantiated and should therefore be expunged along with the charge (already in violation of the code) 501.

(3) 20 IL ADMIN CODE, 504.80 (h)(2) states that, "A committed person does not have the right to confront or cross-examin any witness but may submit questions for the witness prior to the hearing ..."

The committed person was not given this opportunity to submit questions for the witness due to the fact that NO EVIDENCE NOR STATEMENTS MADE BY ANY WITNESSES WAS REVEALED PRIOR TO THE HEARING.

Therefore, committed person had no basis or idea of what questions would have been relevant or appropriate to submit. And, it was for this very same reason that

A-6

Page 3

the committed person explained to the adjusment
committee that he is unable to defend himself
against these charges without "some" or "any"
evidence put before him.
    Even though the DR states that a
continuance was executed by the committee
to garner such evidence — this continuation
was not for the committed peson's benefit, as
he has still not ~~seen~~ been shown any evidence.
    The DR states that the committee
reviewed some evidence; but that is prejudicial
without the committed person being allowed to
view and, if possible, explain such evidence.
    Also, the DR stated that the evidence
was "attached" to the report. It was not.


(4)     20 IL ADMIN CODE, 504. 80 (L)(1) and 504-80(L)(1)(A)(ii)
        state that:
        ~~504-80 (1)(1) "A summary of oral and written statements~~
        ~~and other evidence~~
        504-80 (i) "A written record shall be prepared
        and signed by all committee members which contains:
            (1) A summary of oral and written statements
                and other evidence presented.
                (A) The Committee may consider information
                from ~~them~~ a confidential source if:
                    (ii) The information is reliable.

A-7

PAGE 4

The committee did not provide a summary of the written statements alleged to have been written by, or directed by the committed person.

And, reliability of the confidential Informant was assumed to be established by the purported fact that his statements preceded information that was later found. This does not eliminate the probability that the informant had manufactured the evidence or obtained such evidence prior to his statements being made. It also does not exclude the probability that such evidence was already known to outside agencies prior to the confidential source's statement's. And, since the outside agents told committed person that the investigation had commenced as early as January, 2005 — there is a strong possibility that the confidential informant was told about the alleged evidence prior to his statements.

None of these facts were presented to the committee nor contained in the summary report. Neither was it revealed the motivations of the confidential source to make any statements at all.

For the aforementioned procedural errors and substantive errors, ticket # 200503375/1-PON should be declared VOID and should be either

A - 8

expunged, or a new ticket with proper charges filed and evidence properly presented to the committed person prior to a new hearing being conducted.

Additional errors noted include the restriction of Recreation for a period of 365 days. But, this is in violation of 20 IL ADMIN CODE, chapter I, Section 504.D, subchapter (e) which limits the maximum Recreational restriction to 90 days.

Relief Requested: Committed Person requests that ticket #200503375/1-PON be expunged and that Committed Person be returned to South PC cell house with all privileges restored. Or,

In the alternative, a new ticket be issued to committed person containing proper charges that are substantiated with evidence. And, that such evidence be made available to committed person so that he, too, may properly defend himself and answer the ticket before the committee.

A-9

Page 1 of 3

4-15-06

Dear Counselor Smith,

I have 3 issues to bring to your immediate attention; two of which we have discussed several times over the last 4 or 5 months.

First Item: I am becoming emotionally and physically ill. I have been denied outside yard since June 17th, 2005.

I've grieved it all the way to the Director's office. I asked Dr. Angus' assistance/intervention in January 2006 and again in March of 2006. He said he spoke to the house Lieutenants, but they apparently could not give me yard time.

Furthermore, I wrote Dr. Angus a kite and requested consultation on account of my increasing depression and possible panick attacks. He did not schedule me an appointment. I told you about this on 4-12-06 and you said you could speak to him. I don't know if that's been done — but I am still on my own.

Next Item: The ARB has not answered my grievance yet. I had a video conference on 12-14-2005 with Mrs. Benton and

A-10

page 2 of 3

She assured me she would get back to me with
a ruling in one week. That was _Four Months Ago_!
In the meantime, she has not responded to your
requests for a "status" on my ticket. And, you
were in apparent agreement with me that she
was probably directed not to answer my grievance
on account of my pending charges.

In the meantime, my emotional condition
is getting worse. I am doing all I can on
my own to stay healthy and sane — but, this place
is a constant, non-stop insane asylum.

_Last Item_: Due to my new charges, I've used a
great deal of writing paper and I don't expect
that to diminish any time soon.

I am on commissary denial, as you know.
You also know that, besides my current ticket,
I have never had any other ticket. Yet, they
will not approve removing my commissary denial.
I NEED PAPER TO CONTINUE MY LEGAL REMEDIES.
THE FEAR OF RUNNING OUT IS ADDING TO MY EMOTIONAL
DISTRESS. I NEED PERMISSION TO DO A SPECIAL
SHOP SO THAT I CAN PURCHASE SOME PAPER AND
PENS AND LEGAL ENVELOPES. PLEASE HELP ME.

A-10.1

page 3 of 3

Other than these items, I continue
to do my best to stay healthy, and to
be respectful towards my care takers.

I look forward to any relief
you can get for me.

Sincerely,

Mark Winger
K97120
W: E-1005

cc: Self

A-10.2

April 30th, 2006

Dear Counselor SMITH,

I was given the opportunity to go to yard today for roughly one hour. I am certain that occurred as a result of your efforts. Thank you.

I was also informed (TODAY) that a yard day for those on yard restriction always existed; the last Sunday of each month, but is being changed to the last Saturday of each month.

Be that as it may — I have never been offered yard at any time since June 17th, 2005 until today. One would think that for as long as I've been complaining about not being allowed to go to yard and to as many people as I've complained to and to the levels up and down the ~~chain~~ chain of command that has been aware of my complaint, I would have (or should have) been ~~offered~~ offered yard long before today.

I did enjoy the hour(s) yard time. However, shortly after returning to my cell I had a mild panick attack fearing that today's yard would be my last for another 10½ months. These panick attacks are a very odd thing - They make me think irrationally and yet know it's irrational, but yet it just seems to run away from me. I am afraid to say any more about them.

However, I believe that I need to get help from Dr. Angus or some other psychiatrist who may take my panick attacks (if that is what they are) more seriously.

A-11

Page 2 of 2

I feel very strongly (and with good reason) that the development of these panicky feelings; my headaches, depression, etc, is a direct result of my deprivation from any activity away from my cell since June 17th, 2005.

I only hope it is not a permanent condition requiring a lifetime of psychotropic medications.

I can recall as early as November, 2005 when I went on sick call and Dr. Vade told me that I needed to get outside and exercise more on account of my high cholesterol and family history of heart disease. I had even explained to Dr. Vade that I'm not allowed out to yard. I recall the heaviness I felt for days after that, especially since my brother and father had just had heart surgery. I guess it is no wonder why I would increasingly become some kind of head case and get worked up to where I would think I was dying whenever I would think about my yard restriction and how unfair it was and how I needed — physically needed — yard time away from this cell.

As you can see — I still need to speak with Dr. Angus. I hope you can work the same kind of magic with him as you did with whomever you moved to give me yard time today.

Thanks,

[signature]

Mark. Winger K97120

cc: Self

A-12

## AFFIDAVIT

Now, comes Mark A. WINGER, who states under penalty of purjury that the following statement is true and accurate to the best of his recollection, and states the following:

1.     On May 11th, 2006 I had a psychiatric medical session with Dr. Angus, who is the East House Segregation psychiatric doctor.

2.     During the session I relayed to Dr. Angus the circumstances regarding my segregation, yard restriction and pending charges.

3.     I explained to Dr. Angus the medical symptoms I have been experiencing, and which I claimed to believe were anxiety attacks.

4.     Dr. Angus also believed that I may be experiencing anxiety attacks and based his conclusion by comparing my stated symptoms to his own personal experience.

5.     Dr. Angus told me that once a person starts having anxiety attacks, they can never be cured of them, but can only manage the frequency

A-13

and severity of the anxiety attacks through medication and/or self stress relieving methods.

6.   I further explained to Dr. Angus why I believe my anxiety attacks and the onset of those attacks are a result of my prolonged deprivation from yard exercise.

7.   Dr. Angus stated that he had tried twice to help me get out to yard, but was unsuccessful in those attempts.

8.   Dr. Angus went on to admit that he was aware that I was finally permitted to go to yard after counselor Smith "pulled some strings" with Major Davidson, the East House Major.

9.   Dr. Angus agreed to continue to see me for the remainder of my segregation period, scheduled to end June 16th, 2006.

10.   Dr. Angus agreed to send me some literature on anxiety attacks and how to control them.

11.    During my medical session, Dr. Angus did not take any notes.

12.    Dr. Angus nearly fell asleep a half dozen times during my 20 minute session.

13.    I was Dr. Angus' last patient of the day.

FURTHER, AFFIANT SAYETH NOT.

I, Mark A. WINGER SWEAR UNDER PENALTY OF PURJURY THAT THE AFOREMENTIONED STATEMENTS WERE TRUE AND CORRECT TO THE BEST OF MY ABILITY TO RECALL.

_____
Affiant

MAY 11th, 2006
Date

Mark A. Winger
printed name

A-15

# AFFIDAVIT

Now comes Mark Winger, under penalty of perjury states the following is true and accurate:

1. Yesterday, on May 24th, 2006 I had a medical consultation with the in-house psychiatrist, Dr. Angus.

2. The session lasted for less than 20 minutes.

3. Dr. Angus was again visibly fatigued and appeared to be nearly falling asleep, just like the previous appointment.

4. Dr. Angus stated that he believes that my anxiety attacks may, in addition to my prolonged prohibition from yard exercise, be due to my pending charges.

5. I explained to Dr. Angus that my anxiety attacks pre-dated my charges by nearly six months.

6. Dr. Angus' unexpected diagnosis appeared to have been influenced by someone else, in light of the fact that Dr. Angus and I had not really discussed my charges pending prior to this date — nor, even during this consultation.

7. Dr. Angus ignored any opportunity to comment on whether or not he was responsible for sending the gift candy to counselor Smith, which resulted in me being falsely accused of doing it and caused the administration to move me from East segregation to the less favorable North House. (see Exhibit-N for further explaination.

8. The session did not address my anxiety attacks too much, however, Dr. Angus did promise to send me more literature to help me relax.

9. Further, affiat sayeth not.

I swear that the aforementioned

statements are true and accurate to the
best of my ability to recall.

Mark A. Winger
K97120
May 25th, 2006

Adjustment Committee. The factors listed in Section 504.20(b) shall be considered when making this determination.

1)    If approved by the Chief Administrative Officer, a hearing before the Adjustment Committee shall commence within 14 days for adult offenders or 7 days for juvenile offenders after the approval, whenever possible.

2)    If not approved, the disciplinary report shall be referred back for a hearing before the Program Unit which shall commence within 14 days for adult offenders or 7 days for juvenile offenders after the decision not to approve the recommendation, whenever possible.

i)    The Program Unit Hearing Officer may recommend any of the actions authorized in Section 504.80(k) of this Part except that the Officer may not recommend placement in segregation or confinement, revocation of good time, revocation of transition center status, delay in referral of a juvenile offender to the Prisoner Review Board for recommended parole, an increase in the offender's security classification, or transfer to another correctional facility.

j)    A record shall be signed by the Hearing Officer that contains a summary of oral and written statements and other evidence presented, the decision, and the disciplinary action recommended.

k)    The summary shall be processed in accordance with Sections 504.80 (o) and (p) and 504.90 of this Part.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.110  Computation of Discipline for Multiple Offenses

a)    When an offender has been found in violation of more than one offense arising from a single incident, the maximum penalty shall not exceed the maximum penalty for the most serious offense the individual is found to have committed.

b)    When an offender has been found in violation of more than one offense arising from separate incidents, the maximum penalty for each offense may be imposed, and such penalties shall run consecutively. For example, an offender who is found guilty of assaulting several persons within a short period of time has committed multiple offenses that would be punishable consecutively.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

**Section 504.TABLE A Maximum Penalties for Adult Offenders**

| Offense | Maximum Penalties for Adult Offenders | | | |
|---|---|---|---|---|
| | Loss or Restriction of Privileges | B or C Grade | Good Time Revocation | Segregation |
| 100. Violent Assault of any Person | 1 year | 1 year | 1 year | Indeterminate |
| 101. Arson | 1 year | 1 year | 1 year | 1 year |
| 102. Assaulting any Person | 1 year | 1 year | 1 year | 1 year |
| 103. Bribery & Extortion | 1 year | 1 year | 1 year | 1 year |
| 104. Dangerous Contraband | 1 year | 1 year | 1 year | 1 year |
| 105. Dangerous Disturbance | 1 year | 1 year | 1 year | 1 year |
| 106. Escape or Runaway | 1 year | 1 year | 1 year | 1 year |
| 107 Sexual Misconduct | 1 year | 1 year | 1 year | 1 year |
| 108. Sexual Assault | 1 year | 1 year | 1 year | Indeterminate |
| 109. Electronic Contraband | 1 year | 1 year | 1 year | 1 year |
| 110. Impeding or Interfering with an Investigation | 1 year | 1 year | 1 year | 1 year |
| 201. Concealment of Identity | 6 months | 6 months | 6 months | 6 months |
| 202. Damage or Misuse of Property | 6 months | 6 months | 6 months | 6 months |
| 203. Drugs and Drug Paraphernalia | 6 months | 6 months | 6 months | 6 months |
| 204. Forgery | 4 months | 4 months | 4 months | 4 months |
| 205. Security Threat Group or Unauthorized Organizational Activity | 1 year | 1 year | 1 year | 1 year |
| 206. Intimidation or Threats | 6 months | 6 months | 6 months | 6 months |
| 207. Possession of Money | 6 months | 6 months | 6 months | 6 months |
| 208. Dangerous Communications | 6 months | 6 months | 6 months | 6 months |
| 209. Dangerous Written Material | 6 months | 6 months | 6 months | 6 months |

A-20

| Offense | Maximum Penalties for Adult Offenders | | | |
|---|---|---|---|---|
| | Loss or Restriction of Privileges | B or C Grade | Good Time Revocation | Segregation |
| 210. Impairment of Surveillance | 6 months | 6 months | 6 months | 6 months |
| 211. Possession or Solicitation of Unauthorized Personal Information | 6 months | 6 months | 6 months | 6 months |
| 212. Frivolous Lawsuit | 0 days | 0 days | 6 months | 0 days |
| 213. Failure To Reveal Assets | 6 months | 6 months | 6 months | 6 months |
| 301. Fighting | 1 month | 1 month | 1 month | 1 month |
| 302. Gambling | 2 months | 2 months | 1 month | 1 month |
| 303. Giving False Information to an Employee | 3 months | 3 months | 3 months | 3 months |
| 304. Insolence | 3 months | 3 months | 1 month | 1 month |
| 305. Theft | 6 months | 6 months | 3 months | 3 months |
| 306. Transfer of Funds | 3 months | 3 months | 3 months | 3 months |
| 307. Unauthorized Movement | 2 months | 2 months | 2 months | 2 months |
| 308. Contraband or Unauthorized Property | 3 months | 3 months | 3 months | 3 months |
| 309. Petitions, Postings, and Business Ventures | 6 months | 6 months | 3 months | 3 months |
| 310. Abuse of Privileges | 3 months | 3 months | 3 months | 3 months |
| 311. Failure to Submit to Medical or Forensic Tests | 3 months | 3 months | 3 months | 3 months |
| 402. Health, Smoking, or Safety Violations | 3 months | 3 months | 3 months | 3 months |
| 403. Disobeying a Direct Order | 3 months | 3 months | 3 months | 3 months |
| 404. Violation of Rules | 1 month | 1 month | 1 month | 1 month |
| 405. Failure to Report | 1 month | 1 month | 1 month | 1 month |
| 406. Trading or Trafficking | 2 months | 2 months | 1 month | 1 month |

A-21

20 ILLINOIS ADMINISTRATIVE CODE    CH. 1, SEC.504
SUBCHAPTER e

| Offense | Maximum Penalties for Adult Offenders | | | |
|---|---|---|---|---|
| | Loss or Restriction of Privileges | B or C Grade | Good Time Revocation | Segregation |
| 501. Violating State or Federal Laws | 1 year | 1 year | 1 year | 1 year |
| 601. Aiding and Abetting, Attempt, Solicitation, or Conspiracy | Same as underlying offense | Same as underlying offense | Same as underlying offense | Same as underlying offense |

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

## SUBPART B: ADMINISTRATION OF DISCIPLINE – JUVENILE

### Section 504.200  Applicability (Repealed)

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.202  Definitions (Repealed)

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.205  Responsibilities (Repealed)

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.210  Offenses and Maximum Penalties (Repealed)

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.220  Preparation of Disciplinary Reports (Repealed)

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.230  Temporary Confinement (Repealed)

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.240  Review of Disciplinary Reports (Repealed)

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

A-22

Westlaw

20 IL ADC 504.670
Page 1

20 Ill. Adm. Code 504.670
III. Admin. Code tit. 20, § 504.670

c

WEST'S ILLINOIS ADMINISTRATIVE CODE
TITLE 20 CORRECTIONS, CRIMINAL JUSTICE, AND LAW ENFORCEMENT
CHAPTER I: DEPARTMENT OF CORRECTIONS
SUBCHAPTER E: OPERATIONS
PART 504 DISCIPLINE AND GRIEVANCES
SUBPART D: SEGREGATION, INVESTIGATIVE CONFINEMENT AND ADMINISTRATIVE
DETENTION - ADULT

Current with amendments received through April 14, 2006.

504.670 Recreation for Persons in Segregation Status

a) The Chief Administrative Officer shall determine the number of hours a week offenders in segregation status may recreate outside their cells. Unless restricted by the Chief Administrative Officer in accordance with this Section:

1) Offenders in segregation status for less than 90 consecutive days shall be afforded the opportunity to recreate outside their cells for a minimum of one hour per week.

2) Offenders who have been in segregation status for 90 consecutive days or more shall be afforded the opportunity to recreate outside their cells for a minimum of five hours per week.

b) Unless medically contraindicated, out of cell recreation may be temporarily restricted or suspended if the Chief Administrative Officer determines the activity to be a threat to the safety and security of the facility or any person. For example:

1) Offenders who are in segregation status and who are also under investigation may have their recreational opportunities restricted during the pendency of the investigation for a period not to exceed 90 days.

2) Offenders may have their recreation restricted or limited due to a medical or mental health condition as determined necessary by a health care professional.

3) Offenders who have been witnesses in criminal cases against other offenders, who are informants, or who otherwise require precautions to ensure their protection may have their recreational opportunities restricted.

4) Offenders who are classified as high escape risks may have their recreational opportunities restricted.

c) Offenders who are found guilty under 20 Ill. Adm. Code 504.Subpart A of

1) A violation of State or federal laws, or committing assault, dangerous contraband, dangerous disturbance, escape, sexual misconduct, arson, damage or misuse of property, or aiding or abetting, attempting, soliciting, or conspiring to commit any of those offences while in segregation status may be:

A) Restricted from recreational opportunities for up to 90 days for the first offense, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

20 IL ADC 504.670
Page 2

20 Ill. Adm. Code 504.670
III. Admin. Code tit. 20, § 504.670

B) Restricted from recreational opportunities for up to 90 days or indefinitely placed on limited recreation or both for the second and subsequent offenses

2) Any other major rule infraction which is yard-related and which was committed while the offender was in segregation status may be restricted for up to 90 days for the first offense and up to 90 days for each subsequent major offense.

3) A minor disciplinary offense which is yard-related and which was committed while the offender was in segregation status may be restricted for up to 15 days for the first offense and up to 30 days for each subsequent offense.

d) The period of restriction imposed under subsection (c) of this Section shall be served consecutive to the initial 90-day placement in segregation status and consecutive to any previously imposed recreational restrictions. This shall not limit the ability to restrict recreational opportunities for offenders who have not served 90 consecutive days in segregation.

e) Restrictions on recreational opportunities shall be documented, including the types, length, and reason for the restriction. A copy of the documentation shall be maintained by the facility, a copy shall be placed in the offender's master record file, and a copy shall be given to the offender.

f) Whenever an offender's recreation is restricted for more than 90 consecutive days, the restriction and any health concerns must be personally reviewed and approved in writing by an Assistant Chief Administrative Officer or above.

g) Offenders whose recreational opportunities have been restricted or limited may grieve the determination in accordance with 20 Ill. Adm. Code 504.Subpart F.

h) Recreational opportunities shall not be required during institutional lockdowns or during institutional emergencies, including, but not limited to, riots, strikes, fires, work stoppages, power outages, and natural disasters.

(Source: Amended at 27 Ill. Reg. 6214, effective May 01, 2003)
<General Materials (GM) - References, Annotations, or Tables>

20 ILAC § 504.670

20 IL ADC 504.670
END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A-23

# STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** WINGER, MARK A    **IDOC Number:** K97120    **Race:** WHI

**Hearing Date/Time:** 7/18/05  09:51 AM    **Living Unit:** PON-N-07-34    **Orientation Status:** N/A

**Incident Number:** 200503375/1 - PON    **Status:** Continued Final

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 7/11/05 | 200503375/1-PON | VILT, EDWARD J | INTERNAL AFFAIRS | 08:00 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 208 | Dangerous Communications | |
| 501 | Violating State Or Federal Laws  Comments:720 ILCS 5/8-1.1 | |
| 601.Solicitation/100 | Violent Assault Of Any Person  Comments:SOLICITED MURDER OF A WITNESS | |
| 206 | Intimidation Or Threats | |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS
REPORT READ. OFFENDER WINGER STATED HE IS NOT GUILTY. OFFENDER FURTHER COMMENTED, "I SEE NO EVIDENCE, NO EVIDENCE HAS BEEN PRESENTED. I KNOW YOU HAVE A SNITCH, TELLING STORIES. NONE OF THE CHARGES APPLY TO ME. WHERE IS THE EVIDENCE? THE OUTSIDE INVESTIGATORS TOLD ME THAT THEY WANTED ME TO HELP THEM WITH AN INVESTIGATION TO HELP ME GET THE MAN. THEY WANTED ME TO SIGN A PAPER TO WAIVE MY RIGHT TO AN ATTORNEY....."

**OFFENDER THEN BEGAN TO CITE STATUTES, STATING THE REQUIREMENTS FOR LAW ENFORCEMENT TO SHOW CAUSE/SUBSTANTIATION OF SAID CHARGES.

## BASIS FOR DECISION
THE COMMITTEE IS CONTINUING THE DR BASED UPON THE GARNERING OF EVIDENCE AS REQUESTED BY THE OFFENDER AT THE TIME OF THE HEARING.

## DISCIPLINARY ACTION *(Consecutive to any priors)*

**RECOMMENDED**      **FINAL**

**CONTINUE**      **— CONTINUED —**

**Discipline**   **TICKET CONTINUED**
**Reason:**

## Signatures
**Hearing Committee**

ELLINGER, ROBERT E  - Chair Person    07/18/05   WHI

HOWARD, ERIKA R    07/18/05   WHI

MOTTELER, ANABELLE    07/18/05   HSP

Recommended Action Approved

**Final Comments:** N/A

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** WINGER, MARK A          **IDOC Number:** K97120          **Race:** WHI

**Hearing Date/Time:** 7/18/05  09:51 AM          **Living Unit:** PON-N-07-34          **Orientation Status:** N/A

**Incident Number:** 200503375/1 - PON          **Status:** Continued Final

GUY D PIERCE / MPM  7/20/05                                                07/20/05

Chief Administrative Officer                          Signature                          Date

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

Employee Serving Copy to Committed Person                          8-2-05  3:10pm  by mail

                                                When Served - - Date and Time

# STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

| | | | |
|---|---|---|---|
| Name: WINGER, MARK A | IDOC Number: K97120 | | Race: WHI |
| Hearing Date/Time: 7/21/05  02:00 PM | Living Unit: PON-N-07-34 | | Orientation Status: N/A |
| Incident Number: 200503375/2 - PON | Status: Final | | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 7/11/05 | 200503375/1-PON | VILT, EDWARD J | INTERNAL AFFAIRS | 08:00 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 601.Solicitation/100 | Violent Assault Of Any Person<br>Comments:SOLICITED MURDER OF A WITNESS | Guilty |
| 208 | Dangerous Communications | Guilty |
| 206 | Intimidation Or Threats | Guilty |
| 501 | Violating State Or Federal Laws<br>Comments:720 ILCS 5/8-1.1 | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS

REPORT READ. OFFENDER WINGER STATED HE IS NOT GUILTY. OFFENDER FURTHER COMMENTED, "I SEE NO EVIDENCE, NO EVIDENCE HAS BEEN PRESENTED. I KNOW YOU HAVE A SNITCH, TELLING STORIES. NONE OF THE CHARGES APPLY TO ME. WHERE IS THE EVIDENCE? THE OUTSIDE INVESTIGATORS TOLD ME THAT THEY WANTED ME TO HELP THEM WITH AN INVESTIGATION TO HELP THEM GET THE MAN. THEY WANTED ME TO SIGN A PAPER WAIVING MY RIGHT TO AN ATTORNEY....."

**OFFENDER WINGER THEN BEGAN TO CITE STATUTES, STATING THE REQUIREMENTS DEEMING LAW ENFORCEMENT TO SHOW CAUSE/SUBSTANTIATION OF SAID CHARGES.

**NOTE: HANDWRITING ANALYSIS WAS ACQUIRED FROM OFFENDER WINGER'S MASTER FILE FOR COMPARISON TO THE PHYSICAL EVIDENCE REVIEWED BY THE COMMITTEE.

**THE CONFIDENTIAL SOURCE WAS DEEMED RELIABLE DUE TO VERBAL INFORMATION PROVIDED BY THE SOURCE CORROBORATING WITH PHYSICAL EVIDENCE RECEIVED AT A LATER DATE.

**THE SOURCE'S IDENTITY REMAINS CONFIDENTIAL AND WILL NOT BE REVEALED FOR THE SAFETY AND SECURITY OF THE CONFIDENTIAL INFORMANT'S PERSON, AS WELL AS, THE SECURITY OF THE INSTITUTION.

**C/O E. VILT WAS CONTACTED BY THE COMMITTEE AND CONFIRMED THAT ALL INFORMATION RECORDED ON DR WAS TRUE AND ACCURATE TO THE BEST OF HIS KNOWLEDGE.

## BASIS FOR DECISION

BASED ON THE RESULT OF A JOINT INVESTIGATION CONDUCTED BY THE INTEL UNIT OF THE PONTIAC CORRECTIONAL CENTER, AND OTHER IDOC AGENTS, AS WELL AS, OUTSIDE LAW ENFORCEMENT AGENCIES. THROUGH THE COLLECTION OF PHYSICAL EVIDENCE (REVIEWED BY THE COMMITTEE), ALONG WITH INFORMATION PROVIDED BY THE CONFIDENTIAL INFORMANT (THAT WAS DEEMED RELIABLE THROUGH CORROBORATING INFORMATION) - THE CONCLUSION OF THE INVESTIGATION DEEMED THAT OFFENDER WINGER VIOLATED DEPARTMENTAL RULES 208, 501, 206 AND 601.100. THE COMMITTEE REVIEWED EVIDENCE THAT VERIFIED THAT WINGER INSTRUCTED AN INDIVIDUAL ON HOW TO PROCEED WITH THE KIDNAPPING AND MURDER OF A WITNESS, AS WELL AS INFORMATION ON KIDNAPPING A THIRD PARTY FOR THE PURPOSE OF COLLECTING A RANSOM TO FUND THE KIDNAPPING/MURDER OF THE AFOREMENTIONED WITNESS. THE PHYSICAL EVIDENCE COLLECTED CORROBORATES WITH THE INFORMATION PROVIDED BY THE CONFIDENTIAL SOURCE THAN WINGER SOLICITED AN INDIVIDUAL TO KIDNAP THE KEY WITNESS IN WINGER'S ORIGINAL CRIMINAL TRIAL FOR THE PURPOSE OF FORCING THE WITNESS TO RECANT INFORMATION AND TESTIMONY PROVIDED TO AUTHORITIES. IT SHOULD BE NOTED THAT THE WRITTEN COMMUNICATION MENTIONED IN THE BODY OF THIS REPORT HAS BEEN COMPARED TO ORIGINAL HANDWRITTEN DOCUMENTS ACQUIRED FROM WINGER'S MASTER FILE AND BEARS MANY SIMILAR CHARACTERISTICS (ATTACHED). OFFENDER WINGER WAS POSITIVELY ID BY ID CARD, OTS, INSTITUTIONAL GRAPHICS AND THE CONFIDENTIAL INFORMANT. **THE CONFIDENTIAL SOURCE'S IDENTITY WILL BE KEPT CONFIDENTIAL FOR THE SAFETY AND SECURITY OF THE INSTITUTION, AS WELL AS, THE SAFETY OF THE SOURCE'S PERSON; THE COMMITTEE IS SATISFIED ALL VIOLATIONS OCCURRED AS REPORTED.

A - 26

# STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** WINGER, MARK A      **IDOC Number:** K97120      **Race:** WHI

**Hearing Date/Time:** 7/21/05  02:00 PM      **Living Unit:** PON-N-07-34      **Orientation Status:** N/A

**Incident Number:** 200503375/2 - PON      **Status:** Final

**DISCIPLINARY ACTION**  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 1 Year CGrade | 1 Year CGrade |
| 1 Year Segregation | 1 Year Segregation |
| Revoke GCC or SGT 1 Year | Revoke GCC or SGT 1 Year |
| 1 Year Audio/Visual Restriction | 1 Year Audio/Visual Restriction |
| 1 Year Yard Restriction Restriction | 1 Year Yard Restriction Restriction |
| 1 Year Commissary Restriction | 1 Year Commissary Restriction |
| 1 Year Contact Visits Restriction | 1 Year Contact Visits Restriction |

**Discipline Reason:**      **SERIOUSNESS/NATURE OF OFFENSE**

## Signatures
### Hearing Committee

| | | | |
|---|---|---|---|
| ELLINGER, ROBERT E  - Chair Person | | 07/21/05 | WHI |
| | Signature | Date | Race |
| HOWARD, ERIKA R | | 07/21/05 | WHI |
| | Signature | Date | Race |
| MILLSAP, UNDRAY | | 07/21/05 | BLK |
| | Signature | Date | Race |

Recommended Action Approved

**Final Comments:** N/A

GUY D PIERCE / MPM  7/22/05        07/22/05

**Chief Administrative Officer**       Signature       **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

**Employee Serving Copy to Committed Person**       8-2-05  3:00pm  by mail

      **When Served - - Date and Time**

Now, comes Mark A. Winger who states under penalty of perjury that the following statement is true and accurate to the best of his recollection; and states the following:

1.  Today, Sunday April 30th, 2006 at approximately 1:00 PM a c/o (name unknown) came to my cell (unexpectedly) and asked me if I was going to go to yard today.

2.  I responded, "Am I allowed to go to yard?"

3.  The c/o then said, "I'll take that as a no." and began to walk away.

7.  I called him back and explained that I will go to yard, and that I only asked the question "am I allowed" on account of my 365 Day yard restriction.

5.  The c/o acted as if he did not believe I had actually been given a 365 Day yard restriction. He put my name on his list to go to yard.

6.  About 10 minutes later, c/o Kling and another c/o (name unknown) came to my cell to escort me to yard.

7.  c/o Kling stated that he had told me nearly one month prior that there was a yard day once each month for people on yard restriction.

5.  I said to Kling that at the time he told me about the yard for those on yard restriction he did not know what day that was, but would find out.

9.  Kling denied saying that and responded that the yard day has always been the last Sunday of the month.

10. I told Kling that I remember the conversation differently and that counselor SMITH had told me that the reason Kling had

A-28

said anything to me at all is because counselor SMITH had told Kling that there was a yard day for those on yard restriction, but that SMITH did not know when that was.

11. Kling denied that SMITH ever said anything to him about the matter.

12. Later, Kling told me that he remembered me telling him that I would not want to go to yard anyway.

13. I corrected Kling's false recollection by telling him that I had told him that when I was in <u>North House</u> from June 17th, 2005 to January 5th, 2006 I was told I could not go to yard. And, that it was probably a blessing in disguise being that the inmates in North house fling bodily waste on each other in the yard and that I'm not sure I wanted to step into a septic tank.

14. But, I reminded Kling that I had also told him that they [the prison staff] had not even offered me the opportunity to go to yard.

15. Until today, April 30th, 2006 I had not been asked if I wanted to go to yard at any time during my segregation.

16. I have never refused to go to yard.

17. It should be mentioned that I had complained about my yard denial and my need to have some exercise away from my cell to Dr. Angus on 1-6-06 and 3-31-06, and to Counselor SMITH on 1-30-06, 2-24-06, 3-20-06, ~~and~~ 4-12-06, and 4-27-06.

18. Also, Dr. ANGUS claimed to have spoken with the House Lieutenants after each of my complaints to him.    A-29

19.    Today's 1 Hour and 15 minutes of yard time was my first opportunity for away-from-my-cell exercise for 10½ months (since June 17th, 2005).

AFFIANT SAYETH NOTHING FURTHER.

I MARK WINGER, swear under penalty of perjury that the Afforementioned 19-paragraph statement is true and accurate to the best of my recollection.

_____
                    Affiant

April 30th, 2006

Mark A. Winger

A - 30

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

MARK A. WINGER )
      Plaintiff )
     )
     )
  VS. )  Case Number   06-CV-1226
     )
Guy D. Pierce, et al )
      Defendants )

## MOTION TO ALTER JUDGEMENT

NOW, comes MARK A. WINGER, pro se, pursuant to RULE 59 (**e**) of the Federal Rules of Civil Procedures, and moves this honorable Court to alter its judgement of October 24th, 2006, which dismissed plaintiff's claim and dismissed his request for counsel to be appointed, in the above captioned case, and further says in support thereof:

1.   That plaintiff's case is distinguished from the case relied upon by this honorable court, <u>Pearson V. Ramos, 237 F.3d 881 (2001)</u>, where in that case the court did not address the question whether a one year yard restriction was cruel and unusual, but instead addressed the question whether or not it can be said that a one year yard restriction is cruel and unusual in ALL CASES (emphasis added), which they said it could not.

A-31

Plaintiff's case is further distinguished from
Pearson v. Ramos, where in that case the plaintiff
had multiple violations occurring at different times
over a six month period; he was marked as
violent and incorrigible; allowing him to exercise
on the yard would have given additional opportunities
to attack prison staff and set fires; and,
preventing access to the yard was a reasonable
method to protect the staff.

However, in the complaint at bar, I do
not meet any of those considerations except
multiple violations which parenthetically were non-
yard related and all stem from a single
incident.

And, since my violations all stem from
a single incident, the maximum penalty
allowed is 90 days, because "stacking" is
not an issue, where I.D.O.C. Rule 504.110
states that:

> "When an offender has been found
> in violation of more than one
> offense arising from a single
> incident the maximum penalty
> shall not exceed the maximum
> penalty for the most serious
> offense the individual is
> found to have committed."

A-32

Therefore, the court should view this complaint under the criteria set forth in Perkins v. Kansas Dept. of Corrections, 165 F.3d 803; Lopez v. Smith, 203 F.3d 1122; and, Davenport v. Roberts 844 F.2d 1310, in which the courts would find my one year yard restriction clearly cruel and unusual.

2.     That the court inadvertently failed to consider plaintiff's claim in count-2) in which defendants PIERCE and JONES conspired to transfer plaintiff to the Tamms Supermax Prison in retaliation to my efforts to prepare and file my complaint.
    Where, "conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason" see, Cody v. WEBER, 256 F.3d 764.

3.     That the plaintiff alleged and supported by affidavit deliberate indifference to a serious medical need, and claimed physical and psychological injury which the court did not notice.
    Plaintiff claimed to have developed panick attacks due to prolonged deprivation

A-33

of exercise away from his cell, known as yard exercise, and to have alerted the defendants and staff throughout the grievance process, which in each instance his complaints were ignored with deliberate indifference.

Plaintiff has been diagnosed with panick attacks stemming from the one year yard denial and is undergoing treatment and medication.

Physical injury that requires medication, medical treatment, or inflicts long lasting disability or severe pain satisfy the physical injury requirement; see <u>Luong vs. Hatt, 979 F. Supp. 481 (N.D. Tex. 1997)</u>; <u>U.S. vs. Tencer, 1997 WL 698022 (E.D. La. 1997)</u>.

4.    That plaintiff's request for appointment of counsel should be granted due to the following:

(a) That the defendant's retaliatory behavior to transfer plaintiff to the highly restrictive Tamms Supermax Prison resulted in the "loss" of all of plaintiff's legal materials and research on this complaint and his appeal to his conviction thereby placing an insurmountable

burden on the pro se litigant. And, it was shear happenstance that plaintiff's complaint was among his cell property upon transfer and not lost among all of his legal materials.

(b) That plaintiff suffers from panick attucks due to the facts raised in the complaint and is therefore prone to debilitating impairment of efforts to represent himself.

(c) The claim of physical and psychological injury proximately caused by the out of cell exercise deprivation over a one year period will necessarily require the testimony of an expert witness.

(d) The mere fact that the plaintiff claims retaliation and conspiracy in counts 13 through 21 of his complaint, if taken as true, should be reason enough for this honorable court to recognize that plaintiff stands a

A-35

better chance of receiving truthful
and complete responses to interrogatories
and requests for discovery if both
sides are represented by counsel.

WHEREFORE, plaintiff requests that the
Court consider the aforementioned reasons
and to reinstate plaintiff's complaint and
grant plaintiff's request for appointment of
counsel.

Respectfully,

Mark Winger
IDoc # K97120
Address: Box # 2000
         300ESupermax Rd.
         Tamms, IL 62988

A - 36

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

Mark A. Winger )
      Plaintiff )
     )

VS. )    Case No. _06-CV-1226_
     )

Guy D. PIERCE )
WESLEY G. WILES )
RUBERT E. ELLINGER )
ERIKA R. HOWARD )
ANABELLE MOTTELER )
UNDRAY MILLSAP )
MELODY FORD )
ROGER E. WALKER, JR. )
EDWARD JONES )
      Defendants )

## MOTION TO AMEND COMPLAINT

NOW, comes MARK A. WINGER, pro se, pursuant to RULE 15(a) of the Federal Rules of Civil Procedure, and moves this honorable Court to amend the above captioned complaint to reflect the following:

A-37

1.   That paragraph (25) should read,
" The punishments secomended by the
Adjustment Committee and approved by
all reviewing agents included a one year
yard restriction, which is synonymous
to 'exercise away from inmate's cell'
at Pontiac Correctional Center, and will
be referred to simply as yard or yard
exercise throught the remainder of
this complaint. "

2.   That paragraph (118) should read,
"Were it not for the deliberate indifference
of defendants PIERCE, WILES, JONES,
FORD, and WALKER to my repeated complaints
of a serious medical need I would not have
suffered the physical and psychological injuries
attributed to the panick attacks.

3.   That paragraph (103) should read,
" Without prior notice or any reason given,
I was transferred to Tamms supermax prison
in Tamms, IL. As a result of the transfer
I.D.O.C. "lost" all 4 boxes of my legal materials,
thus placing an extreme burden on me to try
to obtain copies of numerous correspondence
of I.D.O.C. staff segarding my complaint. Thus,
raising said "loss of materials" to a level of

A-38

Constitutional infirmity because I need them in my pursuit to access the courts. Furthermore, I have demonstrative evidence that will show that my sudden transfer and "loss" of legal materials was in retaliation by defendants JONES and PIERCE who had knowledge that I was preparing this complaint. And, it was by happenstance that on the day of my transfer that my complaint was in my cell and not among my legal materials.

4.    Paragraph (104) should read, " Upon my arrival at Tamms I was informed that my yard restriction was a complete yard denial which followed me from Pontiac and was not initiated by Tamms (Exhibits R-1 and R-2). And, Tamms mental health staff has diagnosed me as suffering from panick attacks attributed to my prolonged yard deprivation and they are medicating me for said injury.

WHEREFORE, plaintif moves this honorable court to allow the above

A-39

listed amendments to his complaint.
The complete amended pages will
follow.

Respectfully,

Mark A. Winger
I DOC # K97120
Box # 2000
200 E. Supermax Rd.
Tamms, IL 62988

A-40

**E-FILED**
Tuesday, 24 October, 2006 08:46:28 AM
Clerk, U.S. District Court, ILCD

**United States District Court**
**Central District of Illinois**

Mark A. Winger,

          **Plaintiff,**

          **vs.**               **06-1226**

Guy D. Pierce, et al.,

          **Defendants.**

### Merit Review Order

The plaintiff, Mark A. Winger, a prisoner currently incarcerated by the Illinois Department of Corrections (hereinafter IDOC) at the Tamms Correctional Center has filed a complaint pursuant to 42 U. S. C. § 1983. The plaintiff complains about events that took place while he was incarcerated at the Pontiac Correctional Center. He names as defendants, Guy D. Pierce, warden of Pontiac Correctional Center (hereinafter PCC); Wesley G. Wiles, warden of PCC; Robert E. Ellinger, grievance officer at PCC; Erika R. Howard, Anabelle Motteler, Undray Millsap, adjustment committee members; and Melody Ford, chairperson of the Administrative Review Board and Roger E. Walker, Director of IDOC.

On September 19, 2006, a merit review of the plaintiff's complaint was held. The plaintiff appeared via video conference.

### Standard

The court is required by 28 U.S.C. §1915A to screen the plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).[1]

Pleading particular legal theories or particular facts is not required to state a claim. Fed. R. Civ. P. 8 (complaint need contain only a short, plain statement of the claim and the relief sought); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *citing Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir.). The complaint need only give "a short and plaint statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant county Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168

---

[1]Incarcerated plaintiffs are barred from proceeding in forma pauperis if they have "on 3 or more occasions, while incarcerated, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of physical injury." 28 U.S.C. Section 1915(g).

$A-41$

(1993)(citations and internal quotation marks omitted)(*cited by Dewalt*, 224 F.3d at 612; Fed. R. Civ. P. 8(a)(2).

     The merit review standard is the same as a motion to dismiss standard. It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972). *See also Tarkowski v. Robert Bartlett Realty Company*, 644 F.2d 1204 (7th Cir. 1980). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Gregory v. Nunn*, 895 F.2d 413, 414 (7th Cir. 1990).

     When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Tarkowski*, 644 F.2d at 1207, *quoting Littleton v. Berbling*, 468 F.2d 389 (7th Cir. 1972).

## Allegations

     The plaintiff's allegations are gleaned from his complaint and from statements he made during the September 19, 2006 merit review conference. The plaintiff's allegations are taken as true for purposes of this order.

     On June 17, 2005, the plaintiff was place in segregation pending an investigation. On July 11, 2005, he received a disciplinary ticket charging him with solicitation of violent assault of any person (solicited murder of a witness); intimidation or threats; dangerous communications; and violating state or federal laws. The plaintiff was found guilty of the charges and received as punishment one year C grade, one year segregation, one year audio/visual restriction; one year commissary restriction; one yard restriction; one year contact visits restriction and one year good conduct credit revoked.

     The plaintiff claims that the defendants because the defendants have subjected him to one year of yard restriction, they are violating state laws and federal laws. During the conference, the plaintiff alleged that various individuals conspired to affix a prohibited punishment and that the punishment of 365 days yard restriction is a prohibited punishment. Further, he alleges that IDOC rules clearly state that this punishment is prohibited.

## Discussion

     The only federal claim the plaintiff has raised is a 365 days yard restriction. One year of segregation without access to prison yard does not violate the Eighth Amendment. *Person v. Ramos*, 237 F.3d 881 (7th Cir. 2001). The court does not have jurisdiction over any state claims raised by the plaintiff.

2

A-42

Further, the plaintiff's motion for appointment of counsel is denied as appointment of counsel is not warranted in this case. Neither the legal issue raised in the complaint nor the evidence that might support the plaintiff's claims are so complex or intricate that a trained attorney is necessary. The plaintiff appears more than capable of presenting his case. The plaintiff has alleged no physical or mental disability that might preclude him from adequately investigating the facts giving rise to his complaint. *See Merritt v. Faulkner*, 697 F.2d 761, 765 (7th Cir. 1983). It should additionally be noted that the court grants *pro se* litigants wide latitude in the handling of their lawsuits. The motion is denied pursuant to *Maclin v. Freake*, 650 F.2d 885, 887-89 (7th Cir. 1981). *See Merritt*, 697 F.2d 761, 763 (7th Cir. 1983) and *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992).

**It is therefore ordered:**

1. **The plaintiff's motion for appointment of counsel [2] is denied.**
2. **Pursuant to 28 U.S.C. §1915A(b) and Fed. R. Civ. Pro. Rule 12(b)(6), the plaintiff's entire complaint is dismissed for failure to state a claim upon which relief may be granted.**
3. **Further, because the plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted, this dismissal counts as a strike against the plaintiff under the "three strikes" provision of 28 U.S.C. 1915(g). The clerk of the court is directed to record the plaintiff's strike in the three strike log, forthwith.**
4. **The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the trust fund office. Release from incarceration does not relieve the plaintiff's obligation to pay the filing fee in full. The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**
5. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.**

**Enter this 24th  day of October 2006.**

/s Harold A. Baker

Harold A. Baker
United States District Judge

*A - 43*

## Orders on Motions
1:06-cv-01226-HAB-JAG Winger v.Pierce, et al **CASE CLOSED on 10/24/2006**
17, CLOSED, PRISONER, PROSE

### U.S. District Court

### United States District Court for the Central District of Illinois

## Notice of Electronic Filing

The following transaction was entered on 8/1/2007 at 10:15 AM CDT and filed on 8/1/2007
**Case Name:**        Winger v.Pierce, et al
**Case Number:**      1:06-cv-1226
**Filer:**
**WARNING: CASE CLOSED on 10/24/2006**
**Document Number:** No document attached

**Docket Text:**
**TEXT ORDER entered by Judge Harold A. Baker on 8/1/07. The plaintiffs motion to alter judgment [10] is denied and the plaintiffs motion to amend/correct [11] is denied. (cc: plaintiff) (KB, ilcd)**

**1:06-cv-1226 Notice has been electronically mailed to:**

**1:06-cv-1226 Notice has been delivered by other means to:**

Mark A Winger
K97120
TAMMS
Tamms Correctional Center
Inmate Mail/Parcels
PO Box 400
Tamms, IL 62988

$A - 44$

UNITED STATES DISTRICT COURT

FOR THE

CENTRAL DISTRICT OF ILLINOIS

MARK A. WINGER )
      Plaintiff - Appellant )
          )
      V. )     CASE NO. 06-CV-1226
          )
GUY D. PIERCE )
EDWARD JONES )
WESLEY G. WILES )
ROBERT E. ELLINGER )
ERIKA R. HOWARD )
ANABELLE MOTTELER )
UNDRAY MILSAP )
MELODY FORD )
ROBER E. WALKER )
      Defendants )

## NOTICE OF APPEAL

    Notice is hereby given that Mark A. Winger, plaintiff, pro se, in the above captioned case hereby appeals to the United States Court of Appeals for the Seventh Circuit

A-45

from the final judgement entered
on the 1st day of August, 2007.

MARK A. WINGER
Reg# K97120
Box # 2000
200 E. Supermax Rd.
Tamms, IL 62988

A-46

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MARK A. WINGER )
    Plaintiff-Appellant )
)
Vs. ) CASE No. 06-CV-1226
)
)
GUY D. PIERCE )
WESLY G. LILES )
ROBERT E. ELLINGER )
ERIKA R. HOWARD )
ANABELLE MOTTELER )
UNDRAY MILLSAP )
MELODY FORD )
ROGER E. WALKER, JR. )
EDWARD JONES )
    Defendants )

MOTION FOR LEAVE TO APPEAL
IN FORMA PAUPERIS

I, MARK A. WINGER am the pro se
plaintiff-appellant in this case. In support of
my request for leave to appeal and to proceed
without being required to prepay fees or costs

page 1 of 2

A-47

declare that I was permitted to proceed in forma pauperis in the District Court action, and that I am therefore eligible to proceed in forma pauperis on appeal of the District Court decision under the provision of Prior Approval, see Fed. R. App. P. 24 (a)(3).

WHEREFORE, Plaintiff-Appellant moves this Honorable Court to permit the plaintiff-Appellant to proceed in forma pauperis.

MARK A. WINGER
Reg# K97120
Box # 2000
200 E. Supermax Rd.
Tamms, IL  62988

(Petitioner, pro se)

Page 2 of 2                    A-48

UNITED STATES DISTRICT COURT

FOR THE

CENTRAL DISTRICT OF ILLINOIS

MARK A. WINGER )
      Plaintiff-Appellant )
            )
            )
VS.            ) Case No. 06-CV-1226
            )
Guy D. PIERCE, et. al. )
      Defendants )

AFFIDAVIT IN SUPPORT OF MOTION FOR
LEAVE TO APPEAL IN FORMA PAUPERIS

    I, MARK A. WINGER, Plaintiff-Appellant, pro se,
swear or affirm under penalty of perjury that
I was permitted to proceed in forma pauperis in
the District Court action and that I am thereby
eligible to proceed in forma pauperis of my appeal,
in accordance with the prior approval provision of
Federal Rule, Fed. R. App. P. 24 (a)(3). I believe
I am entitled to redress. I swear or affirm
under penalty of perjury under United State laws
that my statements are true and correct.
(28 U.S.C. §1746 ; 18 U.S.C. §1621).

page 1 of 5

A-49

S:     [signature]
D:    August 7th, 2007

Mark A. Winger
Reg # K97120
Box # 2000
200 E. Supermax Rd.
Tamms, IL 62988

My issues on appeal are:

1.    The court erroneously stated that my
only federal claim was a 365 day denial of
yard access, and ignored my claim of retaliation
by prison officials who tried to prevent me from
filing this claim by transferring me to Tamms
after the completion of my one year penalty;
and, my claim of psychological injury resulting
from the total yard restriction; and the
defendant's deliberate indifference to my
serious medical needs.

2.    The court misapplied the findings of
Pearson v. Ramos (237 F. 3d 881 (7th Cir. 2001))
to erroneously base its decision to deny my
claim that the 365 day yard restriction

page 2 of 5

A-50

was cruel and unusual punishment. Where, the dispositive issue in <u>Pearson v. Ramos</u> was whether stacking of successive infractions occurring over a period of time adding up to a year of yard denial was cruel and unusual punishment. Contrary to that case, I had a single ticket containing multiple infractions stemming from the same incident; I have not been marked as violent and incorrigible; I have not attacked or harmed anyone; the offense was not yard related; and, the department rules restrict the maximum punishment not to exceed the maximum penalty for the most severe infraction, which in this case is 90 days yard restriction.

3. The court erred in dismissing my pro se complaint for failure to state a claim under Rule 12(b)(6) without giving me an opportunity to amend my complaint.

page 3 of 5

A-51

4.    It was error to dismiss my complaint where fact issues existed as to whether or not prison officials acted with deliberate indifference to my medical needs.

5.    It was error to dismiss my complaint where fact issues existed as to whether or not prison officials retaliated against me for demonstrating my intent to file this claim.

6.    It was error to ignore my psychological injury where such injury need not be demonstrated to state a claim of injury from the affects of long term denial of yard exercise, where such injuries resulting from long term denial of yard access are presumed.

7.    It was error to deny my request for appointment of an attorney where I adequately stated in my amended complaint that I suffer from the debrlitating affects of panick attacks which I have also claimed are the

result of my long term deprivation
of yard exercise.

8-7-07

MARK A. Winger
Reg # K97120
Box # 2000
200 E. Supermax Rd.
Tamms, IL 62988

page 5 of 5

A-53

VERIFICATION OF CERTIFICATION

I, Mark A. Winger, the undersigned, certify that:

1. I am the Petitioner-Appellant in the above captioned legal matter;

2. I have read the foregoing Motion and accompanying affidavit and have knowledge of its contents;

and,

3. Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I certify that the statements set forth in the foregoing motion and affidavit are true and correct to the best of my knowledge.

ORDER

The foregoing application is:

_____ Granted

_____ Denied

_____
Judge, District Court

A-54

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MARK A. WINGER )
    Plaintiff )
     )
     )
VS. ) Case No. 06-CV-122L
     )
Guy D. Pierce, et al, ) Honorable Harold A. Baker
    Defendants ) Judge Presiding

CERTIFICATE OF SERVICE

I, Mark A. Winger, pro se plaintiff, swear under penalty of perjury that I placed THREE copies of the BRIEF INFORMING THE COURT AS TO GROUNDS PLAINTIFF IS APPEALING in the inmate mailing system to the Clerk of the above Court on __7th__ day of __November__, 2007.

Respectfully,

MARK A. Winger